IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RYAN TRAVIS,

        Plaintiff,

      v.

CITY OF ROSEBURG, and JACK
COOLEY, individually,

        Defendants.

_____

Civ. No. 09-6353-AA

OPINION AND ORDER

Jeffrey H. Boiler
42919 Deerhorn Rd.
Springfield, OR 97478
    Attorney for plaintiff

Jens Schmidt
Ben Miller
Harrang Long Gary Rudnick P.C.
360 E. 10th Ave., Suite 300
Eugene, R 97401
    Attorneys for defendants

AIKEN, Chief Judge:

    Plaintiff filed suit against the City of Roseburg (the City) and Jack Cooley, the former Fire

Chief of the City's Fire Department.  Plaintiff alleges violations of his First Amendment, equal

1  - OPINION AND ORDER

protection, and due process rights under 42 U.S.C. § 1983, as well as interference with his economic

relationships. Plaintiff's claims arise from the City's disciplinary action against him and plaintiff's

subsequent demotion. Defendants now move for summary judgment pursuant to Fed. R. Civ. P. 56

on all of plaintiff's claims. The motion is granted.

## I. BACKGROUND

In 1998, plaintiff was hired by the City's Fire Department as a firefighter/EMT. He was

promoted to the position of Lieutenant in 2006. Plaintiff has been active in his union and has served

as a shop steward. Cooley is the former Fire Chief for the Department. He was promoted to Chief

in September 2001 and retired on February 1, 2010.

In 2006, plaintiff's girlfriend, Megan Watkins (Watkins), was employed as a medical

assistant at a doctor's office. On December 13, 2006, Cooley went to the doctor's office as a patient

and made disparaging comments about plaintiff to Watkins. He told her that plaintiff looked

terrible, that he was gaining weight, that Cooley preferred the work of another lieutenant, that

plaintiff performed tasks poorly, and that plaintiff's reports contained spelling errors.

After Watkins told plaintiff about Cooley's remarks, plaintiff wrote a letter dated December

13, 2006 to the City Manager, the Mayor, and the City Council. He did not receive a response from

the City. During a mediation in late December of 2006 or early January of 2007, Cooley told

plaintiff it was a misunderstanding, but plaintiff does not believe it was a sincere apology. Plaintiff

also contends Cooley made disparaging comments about his weight, his spelling, his ability to use

the computer system, his knowledge of City streets, and his penmanship. Plaintiff was offended by

these comments.

During the summer of 2008, concerns arose over plaintiff's preparation of service reports

that firefighter/EMT crews must complete when they respond to calls for service. Specifically, the

2  - OPINION AND ORDER

City was concerned that some of plaintiff's reports reflected no medical care had been provided by the crew when in fact medical care had been provided.  On June 24, 2008, plaintiff apparently commented at a staff meeting that he sometimes coded reports as "dispatched and cancelled en route" when in fact medical care had been provided.  Lane Decl., ¶¶ 2-4; Fox Decl., ¶ 8.

By the fall of 2008, the City had obtained evidence to support an investigation. On October 2, 2008, the City placed plaintiff on administrative leave with pay, pending an investigation into falsification of records.

Cooley and Division Chief Mike Lane were concerned that plaintiff's apparent falsification of records might constitute a crime, so they raised the matter with the City Police Department. Lieutenant Pat Moore reviewed the issue and concluded that plaintiff was rushed and hurried in completing his reports, and that it would be difficult to prove that plaintiff acted with criminal intent. Moore confirmed that the Douglas County District Attorney's Office would not file criminal charges against plaintiff.

In October 2008, during the investigation, a firefighter commented at a staff meeting that plaintiff's absence was difficult for the crew because he was part of their "family," and Cooley responded to the effect of, "You would not let it affect you if your family member was a pedophile." Miller Decl., Ex. 4 (Brewer Depo., pp. 45-49, 64-65).  Apparently, some crew members wondered whether Cooley's comment was related to plaintiff's administrative leave.

After the Douglas County District Attorney declined to pursue criminal charges against plaintiff, Deputy Fire Marshal Monte Bryan reviewed plaintiff's reports and issued a report on November 24, 2008.  Bryan's report concluded that the number of "dispatched and cancelled en route" reports for plaintiff was disproportionately high when compared to other firefighters at his same station. Bryan Decl. ¶¶ 2, 3, Ex. 1.

3  - OPINION AND ORDER

The City then hired an outside investigator, Eric Swanson, who interviewed plaintiff and other Fire Department employees and issued a report in early January 2009. Swanson concluded that plaintiff had provided false, misleading and otherwise untruthful statements on a number of his reports; recommended that plaintiff's conduct be referred to the Department of Human Services; and recommended that the physician under whose medical license plaintiff practiced as an EMT, Dr. Charles McCart, be allowed to review the report. Lane Decl., ¶¶ 10-12, Ex. 1.

On January 13, 2009, the City's Human Resources Director, Cooley and Lane met with Dr. McCart about Swanson's report. Dr. McCart directed Cooley to remove plaintiff from the Fire Department's standing orders for EMTs. Effective that date, plaintiff was no longer allowed to work as an EMT under Dr. McCart's medical license.

Subsequently, Cooley issued a "Notice of Intent to Terminate" which informed plaintiff that Cooley intended to recommend to the City Manager that plaintiff's employment be terminated and included a copy of Swanson's report. The notice gave plaintiff the opportunity to respond to Cooley's proposed recommendation in writing and in person. Miller Decl., Ex. 1 (Travis Depo. at 196-197 and Ex. 10). In response, plaintiff's co-workers wrote numerous letters in support of him.

Dr. McCart decided to restore plaintiff's standing orders, and after negotiations between plaintiff, his union, and the City, the parties entered into a "Settlement Agreement and Release of Certain Claims." Under the agreement, plaintiff agreed to step down from his position as Lieutenant and to accept a position as a Firefighter effective April 1, 2009, and to accept a written reprimand.

On October 30, 2009, plaintiff filed this lawsuit.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The materiality of a fact is determined by the substantive law on the issue. <u>T.W. Elec. Serv.,</u> <u>Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. <u>Id.</u> at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. <u>T.W. Elec.</u>, 809 F.2d at 630.

### III. DISCUSSION

<u>A.  Federal Claims Under § 1983</u>

Plaintiff's Second Amended Complaint asserts that defendants violated his First Amendment rights, as well as his rights to substantive and procedural due process and equal protection.

<u>1. Freedom of Speech and Association</u>

Plaintiff alleges violations of his First Amendment rights to freedom of speech and of association. Although unclear from the stated allegations in his amended complaint, his response to defendant's motion indicates that plaintiff brings a First Amendment retaliation claim against the City and Cooley. Plaintiff contends that Cooley retaliated against him for sending a letter to City officials criticizing Cooley's conversation with Watkins in December 2006. Plaintiff maintains that this complaint and his union activities ultimately resulted in Cooley's mistreatment of him and

5  - OPINION AND ORDER

institution of the charges that led to his demotion in 2009.

To succeed on his freedom of speech retaliation claim, plaintiff must show among other factors that:  1) he spoke on a matter of public concern; 2) he spoke as a private citizen and not as a public employee; and 3) his protected speech was a substantial or motivating factor in the adverse employment action.  Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009).  Plaintiff fails to produce sufficient evidence to meet these elements.

First, plaintiff fails to show that he complained about a matter of public concern or in his capacity as a citizen rather than an employee. "Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" Johnson v. Multnomah County, 48 F.3d 420, 422 (9th Cir. 1995) (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)).  In contrast, "speech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.'" Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003) (quoting McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir. 1983)).  Here, plaintiff's letter of complaint was clearly an individual personnel dispute between plaintiff and Cooley, sent to City officials in plaintiff's capacity as a Fire Department employee.  Miller Decl., Ex. 1, pp. 25-26.

Second, plaintiff fails to present any evidence that his letter of complaint in 2006 was a substantial or motivating factor in the actions leading up to his 2009 demotion.  Freitag v. Ayers, 468 F.3d 528, 543 (9th Cir. 2006).  Twenty-five months elapsed between plaintiff's letter in December 2006 and Cooley's notice of his intent to terminate plaintiff's employment in January 2009, and twenty-two months between plaintiff's letter and his placement on paid administrative leave in October 2008.  In similar retaliation contexts, this length of time generally precludes a

6  - OPINION AND ORDER

finding of causation absent other evidence. Coons v. Sec'y of U.S. Dep't of Treasury, 383 F.3d 879, 887 (9th Cir. 2003) (twelve months between protected speech and adverse employment decision was insufficient proximity to infer retaliation in employment discrimination action); Manatt v. Bank of America, 339 F.3d 792, 802 (9th Cir. 2003) (nine months insufficient proximity to support Title VII retaliation claim). Plaintiff fails to submit any admissible evidence, such as affidavits or deposition testimony of other City or Fire Department personnel, suggesting that plaintiff's 2006 letter played a role in his demotion. Consequently, plaintiff cannot prevail on a First Amendment retaliation claim based on his letter of complaint.

Likewise, plaintiff presents no admissible evidence that his union position or activities were a causal factor leading to his termination notice and ultimate demotion. Thomas v. City of Beaverton, 379 F.3d 802, 809 (9th Cir. 2004). Plaintiff presents no evidence of union activities he performed that were criticized or opposed by Cooley. Miller Decl., Ex. 1 (Travis Depo., p. 117). Accordingly, summary judgment is granted on plaintiff's freedom of speech and association claims against the City and Cooley.

2. Due Process

Plaintiff next asserts that Cooley and the City deprived him of his property and liberty interests in his employment, without notice or the opportunity to be heard. Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993) ("A section 1983 claim based upon procedural due process thus has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process."). Alternatively, plaintiff contends that defendants' actions were arbitrary, capricious, and irrational.

To the extent plaintiff's procedural due process claims rest on a property interest in his employment, the City and Cooley provided plaintiff with notice of their employment decision and

7  - OPINION AND ORDER

the opportunity to be heard, as evidenced by the Notice of Intent to Terminate and subsequent negotiations and settlement agreement. Further, to the extent plaintiff can assert a substantive due process claim based on his demotion, he fails to present any evidence that the City's actions were malicious, arbitrary or "extreme" so as to violate his substantive due process rights. Engquist v. Or. Dep't of Agric., 478 F.3d 985, 997-98 (9th Cir. 2007). An investigative report found that plaintiff had falsified reports, and ultimately plaintiff was not terminated and agreed to a demotion pursuant to a settlement agreement between the City, plaintiff, and his union. Therefore, plaintiff cannot prevail on his due process claims based on his administrative leave or demotion.

Plaintiff also claims that defendants deprived him of his liberty interest without due process through Cooley's statements to Watkins in December 2006 and Cooley's "pedophile" comment in October 2008. "If, in the context of employment termination, the employer publicizes a charge that impairs a reputation for honesty or morality, then a liberty interest is implicated and the employee must be allowed to refute the stigmatizing charge." Tibbetts v. Kulongoski, 567 F.3d 529, 536 (9th Cir. 2009) (internal quotation marks and citation omitted). In addition to stigma, the plaintiff must show that: "1) the accuracy of the charge is contested; 2) there is some public disclosure of the charge; and 3) it is made in connection with the termination of employment or the alteration of some right or status recognized by state law." Llamas v. Butte Cmty. College Dist., 238 F.3d 1123, 1129 (9th Cir. 2001).

However, any claim based on Cooley's 2006 statements to Watkins is barred by the applicable two-year statute of limitations. Cooper v. Ashland, 871 F.2d 104, 105 (9th Cir. 1989). Further, such comments were not "charges," were not publicly disclosed, and were not made in connection with a termination of plaintiff's employment. Likewise, Cooley's pedophile remark was not publicly disclosed and was not made in connection with a termination of plaintiff's employment.

8  - OPINION AND ORDER

Learned v. City of Bellevue, 860 F.2d 928, 933 (9th Cir. 1988) (supervisor did not "publicly stigmatize" employee when comments were made only to other employees in the same department and thus did not interfere with the plaintiff's "liberty to pursue the career of his choice"). Even if the comment is a defamatory charge as plaintiff's contends, defamation alone cannot support a claim under § 1983 absent any connection to a termination of employment, a refusal to rehire, or alteration of a right or status "recognized by state law." Paul v. Davis, 424 U.S. 693, 709-710, 711-12 (1976). Plaintiff's employment was not terminated, and he does not identify any other state-protected right or status that allegedly was altered or extinguished by Cooley's remark. Plaintiff simply argues that the remark defamed him and harmed his reputation. However, plaintiff's interest in his reputation alone "is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law." Id. at 712. Rather, plaintiff's recourse is a state law tort claim against Cooley, a claim not asserted in this action. Thus, plaintiff cannot prevail on his due process claims.

### 3. Equal Protection

Plaintiff also contends that Cooley's actions denied him equal protection of the law. Second Am. Compl., ¶¶ 9, 16. However, plaintiff does not present evidence that he was treated differently than others similarly situated or that such different treatment was based on his membership in any particular class. To the extent plaintiff alleges that he was singled out for mistreatment, a "class-of-one" claim of equal protection is not actionable in the public employment context. Engquist v. Or. Dep't of Agric., 553 U.S. 591, 609 (2008) ("Public employees typically have a variety of protections from just the sort of personnel actions about which Engquist complains, but the Equal Protection Clause is not one of them.").

### B.  State Law Claim of Intentional Interference With Economic Relations

Finally, plaintiff alleges a claim of tortious interference with economic relations against the

City based on Cooley's conduct.  To prevail on such a claim, plaintiff must show:

> (1) the existence of a professional or business relationship (which could include, e.g., a contract or prospective economic advantage); (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages.

Wieber v. FedEx Ground Package Sys., Inc., 231 Or. App. 469, 477, 220 P.3d 68 (2009) (quoting

McGanty v. Staudenraus, 321 Or. 532, 535, 901 P.2d 841 (1995)).

Plaintiff does not allege interference with his employment relationship with the City, but with his "economic relationships with the Collective Bargaining Unit representing employees of its Fire Department, professional relationships within the medical community, and with personal relationships." Second Am. Compl. ¶ 14.  Defendants maintain that these relationships are not the sort of voluntarily-created economic relationships or expectancies that the tort protects. I agree. See Allen v. Hall, 328 Or. 276, 280-81, 974 P.2d 199 (1999); Fox v. Country Mut. Ins. Co., 169 Or. App. 54, 72-75, 7 P.3d 677 (2000).  I further find that plaintiff fails to produce any evidence of causation or damages with respect to Cooley's comments.  Therefore, plaintiff cannot prevail on this claim.

## IV. CONCLUSION

Plaintiff fails to present evidence to support his § 1983 claims against the City or Cooley, or his common law tort claim against the City.  Accordingly, defendants' Motion for Summary Judgment (doc. 27) is GRANTED.

IT IS SO ORDERED.

Dated this 14th day of July, 2011.

_____
Ann Aiken
United States District Chief Judge

10 - OPINION AND ORDER